**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, <br><br> *Plaintiff,* <br><br> v. <br><br> JOE PARK, <br><br> *Defendant.* | Civil Action No. 17-12107 <br> (JMV) (MF) <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on an unopposed motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) by Plaintiff Malibu Media against Defendant Joe Park. D.E. 17. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**. The Court is not satisfied that Plaintiff has sufficiently demonstrated that the named Defendant actually committed the complained of acts of infringement.

I.     **Factual Background & Procedural History**[1]

Plaintiff, the owner of the copyrighted movies at issue in this case, alleges that Defendant is a persistent online infringer of its copyrights. FAC ¶¶ 2, 3. Plaintiff claims that Defendant's

---

[1] The facts are taken from Plaintiff's Amended Complaint, D.E. 8 (hereinafter "FAC"), as well as Plaintiff's affidavit in support of his motion for default judgment, D.E. 17-1 (hereinafter "Pl. Aff."), and exhibits submitted in conjunction with Plaintiff's motion for default judgment, D.E. 17-3, 17-4, 17-5, 17-6, 17-7. *See Trustees of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

Internet Protocol address ("IP address") was used to illegally distribute its copyrighted movies. FAC ¶ 2.; D.E. 17-3. Plaintiff apparently owns copyrights to pornographic (or, euphemistically, adult) movies. FAC ¶ 22, D.E. 8-2. Plaintiff alleges that Defendant used the "BitTorrent file distribution network," a peer-to-peer file sharing system, to distribute Plaintiff's movies. FAC ¶¶ 10, 23. Plaintiff indicates that its investigator, IPP International UG, "established a direct TCP/IP connection" with Defendant's IP address to confirm that Defendant downloaded, copied, and distributed a copy of Plaintiff's movies without authorization. FAC ¶¶ 17-23.

On November 11, 2017, Plaintiff filed a Complaint against John Doe Subscriber IP address 72.225.136.86, claiming damages for copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act"). D.E. 1. Plaintiff then used proven IP address geolocation technology, which it claims has consistently worked in similar cases, to trace Defendant's acts of copyright infringement to a physical address located within this District. FAC ¶ 5. Plaintiff asserts that the geolocation technology used has proven to be accurate to the District level in over 99% of the 1,000 cases filed. *Id.* ¶ 6.

On December 4, 2017, Plaintiff filed a motion for leave to serve a third-party subpoena on John Doe Subscriber's Internet Service Provider ("ISP"), D.E. 3, which the Court granted on February 22, 2018, D.E. 6. On April 26, 2018, Plaintiff filed an Amended Complaint naming Joe Park as the Defendant. D.E. 8. On May 3, 2018, Defendant was served personally at his Paramus, New Jersey address with the Summons and Amended Complaint. D.E. 12. As to date, Defendant has not filed an answer or responded to the Amended Complaint and has otherwise failed to appear before this Court. On June 28, 2018, Plaintiff requested that the Clerk of the Court enter default against Defendant, D.E. 15, which the Clerk granted on July 2, 2018. On August 10, 2018, Plaintiff filed the motion for default judgment. D.E. 17. Plaintiff served the motion for default on

Defendant at two New Jersey addresses via the mail. *See* D.E. 17-1.

**II.     Law & Analysis**

    **a. Standard of Review**

Federal Rule of Civil Procedure 55(b)(2) allows a court to enter default judgment against a party that fails to plead or otherwise defend claims made against it. Fed. R. Civ. P. 55(b)(2). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to entering a default judgment, the court is required to: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

3

### b. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)). 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff is suing under the Copyright Act. FAC ¶¶ 1, 4. "The Copyright Act creates a cause of action in favor of the owner of copyright for direct infringement." *Malibu Media, LLC v. Tsao*, 2016 WL 3450815, at *3 (D.N.J. June 20, 2016) (citing 17 U.S.C. § 501). Therefore, the Court has subject matter jurisdiction.

The Court also has personal jurisdiction over Defendant. "[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." *Chanel, Inc.*, 133 F. Supp. 3d at 684 (internal quotation marks omitted). Here, Defendant is a resident of New Jersey and was personally served with process at his address. FAC ¶¶ 7, 9. Therefore, the Court has personal jurisdiction over the Defendant.

### c. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). An individual defendant may be served by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e). Here, Plaintiff properly served Defendant as an individual on May 3, 2018. *See* D.E. 17-4. Therefore, the Court finds that service was proper.

4

### d. Sufficiency of Causes of Action

In considering the sufficiency of the action, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. Plaintiff's Amended Complaint asserts a claim for copyright infringement against Defendant for allegedly infringing on Plaintiff's copyrighted movies. FAC ¶¶ 29-33. "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citation omitted). "In addition, copyright infringement may be considered willful when a Defendant defaults and decides not to defend against the action." *See Malibu Media, LLC*, 2016 WL 3450815, at *3 (citing *Malibu Media, LLC v. Flanagan*, 2014 WL 2957701, at *6 (E.D. Pa. June 30, 2014)).

Plaintiff is the registered owner of the 14 copyrighted movies that were allegedly infringed upon by Defendant. FAC ¶¶ 3, 22, 29; D.E. 17-3. Plaintiff alleges that Defendant copied, reproduced, and distributed its copyrighted movies through BitTorrent. *Id.* ¶¶ 10, 25, 30, 32. Plaintiff claims to have proven Defendant's IP address through geolocation technology. It is the adequacy of this information which causes the Court concern. To be sure, courts in this District have found the use of such technology to be sufficient when ordering a default judgment. *See, e.g., Malibu Media, LLC v. Toshi Yamada*, 2019 WL 1586813, at *2 (D.N.J. Apr. 12, 2019); *Malibu Media*, 2016 WL 3450815, at *3; *and Malibu Media, LLC v. Deleon*, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016). However, having had an opportunity to review recent decisions as to the relevant technology, and its corresponding shortfalls, this Court now finds that Plaintiff has not made a sufficient showing that Defendant is liable.

5

In a scathing opinion, United States District Judge Royce Lamberth denied a plaintiff's request for a Rule 26(f) subpoena in *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018). The plaintiff, Strike 3, produced adult movies. *Id.* at 161. Judge Lamberth also described Strike 3 as a "copyright troll. Its swarms of lawyers hound people who allegedly watch their content through Bittorent[.]" *Id.* Like Plaintiff in this case, Strike 3 also identified "an infringing Internet protocol (IP) address, using geolocation technology to trace that address to a jurisdiction." *Id.* at 161-62. Judge Lamberth commented on the unreliability of such a process:

> This method is famously flawed: virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another. *See, e.g.*, James Temple, *Lawsuit Says Grandma Illegally Downloaded Porn*, S.F. Chron. (July 15, 2011, 4:00 AM), https://www.sfgate.com/business/article/Lawsuit-says-grandma-illegally-downloaded-porn-2354720.php. Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring they watched a specific TV show.

*Id.* at 162.

The court in *Strike 3* also had some observations as to the plaintiff's litigation methods:

> [T]he copyright troll's success rate comes not from the Copyright Act, but from the law of large numbers. According to PACER, over the past thirteen months, Strike 3 has filed 1849 cases just like this one in courts across the country—forty in this district alone—closely following the copyright trolls who together consumed 58% of the federal copyright docket in 2015.[2] These serial litigants drop cases at the first sign of resistance, preying on low-hanging fruit and staying one step ahead of any coordinated defense. They don't seem

---

[2] Of note, Plaintiff Malibu Media seems to have followed a similar pattern. As of September 4, 2018, Plaintiff's counsel certified that 87 cases in this district were related. All involved Plaintiff proceeding against John Doe defendants, who were described as subscribers assigned a specific IP address.

>to care about whether defendant actually did the infringing, or about developing the law.

*Id.*

In denying Strike 3's request for a Rule 26(f) subpoena to identify the defendant who was assigned the relevant IP address, the court determined that "Strike 3's need for discovery does not outweigh [the] defendant's privacy expectations." *Id.* At the outset, the *Strike 3* court found that the plaintiff had shown the required good cause because using geolocation services justifies a good-faith belief that the court had personal jurisdiction over a defendant. *Id.* at 162-63 (citing *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).

Yet, relying on the Second Circuit's decision in *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010), Judge Lamberth found that the defendant's privacy expectations outweighed Strike 3's need for discovery. *Id.* at 163-64. The *Strike 3* court explained that "Strike 3's request lacks the type of specificity the Second Circuit's test requires: that the request will identify a copyright infringer who can be sued." *Id.* at 164 (citations omitted). The court noted that the plaintiff could not withstand a Rule 12(b)(6) motion without resorting to more intensive discovery devices beyond the requested subpoena. *Id.* In other words, the court continued, the name of the IP address subscriber failed "to give the [c]ourt adequate confidence this defendant actually did the infringing." *Id.* The court in *Strike 3* also found that the defendant's had a greater privacy concern given the nature of the copyrighted material, pornographic films, and the damage of having the defendant's name associated with such movie titles – even if the defendant was not the person who actually downloaded the copyrighted material. *Id.*

The *Strike 3* court closed with the following observation:

>Armed with hundreds of cut-and-pasted complaints and boilerplate discovery motions, Strike 3 floods this courthouse (and others around the country) with lawsuits smacking of extortion. It treats

7

>this Court not as a citadel of justice, but as an ATM. Its feigned desire for legal process masks what it really seeks: for the Court to oversee a high-tech shakedown. This Court declines.

The reasoning expressed in *Strike 3* was echoed by the Ninth Circuit, albeit in less rousing fashion. Importantly, however, the Ninth Circuit's case involved neither pornographic movies nor an alleged patent troll. In *Cobbler Nevada LLC v. Gonzalez*, 901 F. 3d 1142, 1145 (9th Cir. 2018), the plaintiff owned the copyrights to *The Cobbler*, a mainstream film. The plaintiff identified an IP address that downloaded and distributed the movie numerous times without authorization by using BitTorrent. *Id.* at 1145. The defendant was the subscriber assigned to the IP address, and he operated an adult foster care home; the internet service was accessible to residents and visitors of the home. *Id.* The district court dismissed the complaint for direct and contributory copyright infringement for insufficiently pleading the claims. *Id.* at 1146.

The *Cobbler* court first concluded that the plaintiff had not plausibly stated a claim for direct infringement based solely on the IP address. *Id.* at 1144, 1146-47. The Ninth Circuit explained as follows:

>Although copyright owners can often trace infringement of copyrighted material to an IP address, it is not always easy to pinpoint the particular individual or device engaged in the infringement. Internet providers, such as Comcast or AT & T, can go so far as to identify the individual who is registered to a particular IP address (i.e., an account holder) and the physical address associated with the account, but that connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address. Identifying an infringer becomes even more difficult in instances like this one, where numerous people live in and visit a facility that uses the same internet service. While we recognize this obstacle to naming the correct defendant, this complication does not change the plaintiff's burden to plead factual allegations that create a reasonable inference that the defendant is the infringer.

8

*Id.* at 1146-47. As a result, the court in *Cobbler* concluded, the plaintiff had not crossed the necessary threshold between possible and plausible in its complaint. *Id.* at 1147.

The circuit reached the same conclusion as to the plaintiff's contributory infringement claim. *Id.* at 1147-49. The *Cobbler* court first observed that to contributorily infringe, a defendant must intentionally induce or encourage direct infringement. *Id.* at 1147 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007)). Relying on Supreme Court precedent, the Ninth Circuit indicated that absent evidence of intent, contributory infringement could not be based on the failure to take affirmative steps to avert infringement if the relevant device was capable of significant noninfringing uses. *Id.* at 1148 (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913 (2005); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). The court in *Cobbler* then found that there was no evidence that the defendant actively encouraged infringement, that the defendant did not have a duty to actively monitor users of his internet service for infringement, and that internet access was capable of substantial noninfringing uses. *Id.* at 1148-49.

Following *Cobbler*, a district judge in the Northern District of Illinois dismissed a suit brought by Malibu Media in *Malibu Media, LLC v. Doe*, No. 18-C-450, 2018 WL 6446404 (N.D. Ill. Dec. 10, 2018). In that case, like here, Malibu Media accused a John Doe subscriber assigned a certain IP address of copyright infringement through the use of BitTorrent. *Id.* at *1. The court in *Malibu Media* found that the plaintiff had not "sufficiently tied Doe to the alleged infringing conduct to support a copyright claim" and therefore dismissed the amended complaint pursuant to Rule 12(b)(6). *Id.* The district judge recognized that courts across the country were split as to whether alleging that a defendant is the account holder of an IP address used to download and distribute movies sufficiently links a defendant to infringing conduct. *Id.* at 3 (citing cases).

9

Ultimately, the *Malibu Media* court found the reasoning of the Ninth Circuit in *Cobbler* to be persuasive. *Id.* (citing *Cobbler*, 901 F.3d at 1145). In doing so, the district judge found that the *Cobbler* ruling was not limited to situations such as an adult care home in which both residents and visitors could access the IP address nor did the court find persuasive Malibu Media's argument that the defendant allegedly downloaded twenty movies. *Id.*

The Court finds the reasoning in *Strike 3*, *Cobbler*, and *Malibu Media* to be persuasive. Plaintiff will have to show something more than merely tying Defendant to an IP address in order to sufficiently establish copyright infringement. As the Ninth Circuit aptly observed: "[The IP address] connection does not mean that the internet subscriber is also the infringer. The reasons are obvious—simply establishing an account does not mean the subscriber is even accessing the internet, and multiple devices can access the internet under the same IP address." *Cobbler*, 901 F.3d at 1146-47. Moreover, the given IP address also does not account for the other evidentiary concerns cited by the *Strike 3* court: "virtual private networks," "onion routing spoof IP addresses," and "a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another[.]" The Court recognizes, as the *Cobbler* court did, that the technology limitations potentially puts a plaintiff in a difficult position in naming the correct defendant. But, as the *Cobbler* court also acknowledged, such limitations do not relieve a plaintiff of alleging sufficient facts so that a court can reasonably infer that the named defendant is the actual infringer. As a result, the Court denies the request for default judgment without prejudice.

### e. Default Judgment & Damages

"Before imposing the extreme sanction of default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject

10

to default." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4 (quoting *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008)). In addition, while the factual allegations of the complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted). Here, the Court does not reach an analysis of the additional factors or damages in light of its finding that default judgment should be denied for other reasons.

## III. Conclusion

For the reasons set forth above, Plaintiff's motion for a default judgment is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

Dated: July 9, 2019

_____
John Michael Vazquez, U.S.D.J.

11